UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DEZARAE JANEDA,

    Plaintiff,

v.                                                        Case No:   2:16-cv-803-FtM-MRM

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## OPINION AND ORDER

Before the Court is Plaintiff Dezarae Janeda's Complaint (Doc. 1) filed on October 28, 2016. Plaintiff seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for a period of disability, disability insurance benefits, and supplemental security income. The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda in support of their positions. For the reasons set out herein, the decision of the Commissioner is **REVERSED AND REMANDED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

**I.    Social Security Act Eligibility, the ALJ Decision, and Standard of Review**

    **A.    Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The impairment must be severe, making the claimant unable to do her previous work or any

other substantial gainful activity that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3); 20 C.F.R. §§ 404.1505 – 404.1511, 416.905 – 416.911. Plaintiff bears the burden of persuasion through step four, while the burden shifts to the Commissioner at step five. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

B. **Procedural History**

On April 8, 2014, Plaintiff filed an application for disability insurance benefits and supplemental security income. (Tr. at 94, 225-32). Plaintiff asserted an onset date of March 17, 2013. (*Id.* at 225). Plaintiff's applications were denied initially on May 23, 2014 and on reconsideration on September 16, 2014. (*Id.* at 94, 95, 128, 129). A hearing was held before Administrative Law Judge ("ALJ") Hope G. Grunberg on August 10, 2015. (*Id.* at 31-72). The ALJ issued an unfavorable decision on October 14, 2015. (*Id.* at 12-23). The ALJ found Plaintiff not to be under a disability from March 17, 2013, through the date of the decision. (*Id.* at 23).

On October 13, 2016, the Appeals Council denied Plaintiff's request for review. (*Id.* at 1-5). Plaintiff filed a Complaint (Doc. 1) in the United States District Court on October 28, 2016. This case is ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (*See* Doc. 23).

C. **Summary of the ALJ's Decision**

An ALJ must follow a five-step sequential evaluation process to determine if a claimant has proven that she is disabled. *Packer v. Comm'r of Soc. Sec.*, 542 F. App'x 890, 891 (11th Cir. 2013) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).[1] An ALJ must determine

---

[1] Unpublished opinions may be cited as persuasive on a particular point. The Court does not rely on unpublished opinions as precedent. Citation to unpublished opinions on or after

2

whether the claimant: (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform her past relevant work; and (5) can perform other work of the sort found in the national economy. *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004). The claimant has the burden of proof through step four and then the burden shifts to the Commissioner at step five. *Hines-Sharp v. Comm'r of Soc. Sec.*, 511 F. App'x 913, 915 n.2 (11th Cir. 2013).

The ALJ found that Plaintiff met the insured status requirements through March 31, 2017. (Tr. at 14). At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 17, 2013, the alleged onset date. (*Id.*). At step two, the ALJ determined that Plaintiff had the following severe impairments: slow transit constipation with a history of June 2014 colectomy; distal right ureterocele; and carpel tunnel syndrome with a history of right carpel tunnel release surgery. (*Id.* at 15). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). (*Id.* at 17).

At step four, the ALJ found the following:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 [C.F.R. §§] 404.1567(b) and 416.967(b) except the claimant may not climb ladders, ropes, or scaffolds, and should avoid workplace hazards such as unprotected heights and dangerous moving machinery. She can frequently handle and finger with the bilateral upper extremities. Due to the totality of her symptoms, the claimant is

---

January 1, 2007 is expressly permitted under Rule 31.1, Fed. R. App. P. Unpublished opinions may be cited as persuasive authority pursuant to the Eleventh Circuit Rules. 11th Cir. R. 36-2.

limited to understanding, remembering and carrying out simple, routine[,] and repetitive tasks.

(*Id.* at 17).

The ALJ determined that Plaintiff was unable to perform her past relevant work as a waitress, jewelry store manager, jewelry sales associate, receptionist, and executive assistant. (*Id.* at 21). The ALJ considered Plaintiff's age, education, work experience, and residual functional capacity, and found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (*Id.* at 22-23). The ALJ noted that the vocational expert identified the following representative occupations that Plaintiff was able to perform at the light exertional level: (1) small parts assembler, DOT # 706.684-022, unskilled, SVP 2; (2) assembly machine tender, DOT # 754.685-014, unskilled, SVP 2; and (3) mail clerk/sorter, DOT # 209.687.026, unskilled, SVP 2. (*Id.* at 22-23).[2] The vocational expert further testified that if Plaintiff were limited to sedentary work, Plaintiff was able to perform the following representative occupations: (1) food order clerk, DOT # 209.567.014, unskilled, SVP 2; (2) sorting machine operator, DOT # 681.685-030, unskilled, SVP 2; and (3) polishing machine operator, DOT # 690.685-194, unskilled, SVP 2. (*Id.* at 23). The ALJ concluded that Plaintiff was not under a disability at any time from March 17, 2013, through the date of the decision. (*Id.*).

### D. Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390

---

[2] "DOT" refers to the *Dictionary of Occupational Titles*.

4

(1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. §405(g). Substantial evidence is more than a scintilla—*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982); *Richardson*, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that "the evidence preponderates against" the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## II. Analysis

On appeal, Plaintiff raises three issues. As stated by Plaintiff, they are:

(1) The residual functional capacity ("RFC") assessment is not supported by substantial evidence because the ALJ failed to account for Plaintiff's fibromyalgia and associated pain symptoms in evaluating her work capacity when she found fibromyalgia was not a medically determinable impairment, in violation of 20 C.F.R. §§ 404.1545(b), 416.945(b).

(2) The ALJ committed reversible error when she failed to give weight to the opinion of treating physician Dr. Maria Espinoza and when she relied upon on the dated and incomplete opinion of a non-examining medical consultant, in violation of 20 C.F.R. §§ 404.1527, 416.927 and SSR 96-2p.

(3) The RFC assessment is not supported by substantial evidence because the ALJ failed to account for Plaintiff's digestive/intestinal disorders and non-

exertional limitations in the RFC assessment, in violation of 20 C.F.R. §§ 404.1545(b)-(e), 416.945(b)-(e).

(Do. 19 at 2). The Court addresses each issue in turn.

### A. ALJ's Evaluation of Fibromyalgia

Plaintiff asserts that because the ALJ did not find fibromyalgia a medically determinable impairment, as a result, the ALJ did not consider any of Plaintiff's symptoms or limitations arising from her fibromyalgia in assessing Plaintiff's residual functional capacity ("RFC"). (Doc. 19 at 9). Thus, Plaintiff argues that the ALJ's findings are inconsistent with the record and not supported by substantial evidence. (*Id.*). The Commissioner argues in response that Plaintiff failed to meet her burden of proving that her fibromyalgia imposed additional limitations on her ability to work. (Doc. 24 at 9).

"The residual functional capacity is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). An individual's RFC is his ability to do physical and mental work activities on a sustained basis despite limitations secondary to his established impairments. *Delker v. Comm'r of Soc. Sec.*, 658 F. Supp. 2d 1340, 1364 (M.D. Fla. 2009). In determining a claimant's RFC, the ALJ must consider all of the relevant evidence of record. *Barrio v. Comm'r of Soc. Sec.*, 394 F. App'x 635, 637 (11th Cir. 2010). However, the Eleventh Circuit has consistently held that "the claimant bears the burden of proving that he is disabled, and consequently, he is responsible for producing evidence in support of his claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

Plaintiff argues that the ALJ erred in her analysis pursuant to SSR 12-2p. (Doc. 19 at 9). Plaintiff claims that SSR 12-2p provides two separate sets of criteria that a claimant may utilize to establish the presence of fibromyalgia as a medically determinable impairment. (*Id.*).

6

Plaintiff asserts that the first set of criteria stems from the 1990 American College of Rheumatology ("ACR") Criteria for the Classification of Fibromyalgia, and the second stems from the 2010 ACR Preliminary Diagnostic Criteria. (*Id.*). Plaintiff argues that the ALJ erred in her analysis pursuant to the 1990 ACR and failed to consider whether Plaintiff met the requirements of the 2010 ACR criteria. (*Id.* at 9-10).

SSR 12-2p, entitled, "Titles II and XVI: Evaluation of Fibromyalgia" provides "guidance on how we develop evidence to establish that a person has a medically determinable impairment of fibromyalgia, and how we evaluate fibromyalgia in disability claims and continuing disability reviews under titles II and XVI of the Social Security Act." SSR 12-2p, 2012 WL 3104869, *1 (July 25, 2012).[3] SSR12-2p sets forth two separate criteria, "which we generally base" on the 1990 ACR Criteria for Classification of Fibromyalgia (Section II.A.), or the 2010 ACR Preliminary Diagnostic Criteria (Section II.B.). *Id.* at *2. The criteria for both the 2009 ACR and the 2010 ACR are as follows:

> A. The 1990 ACR Criteria for the Classification of Fibromyalgia. Based on these criteria, we may find that a person has an MDI of FM if he or she has all three of the following:
>
> 1. A history of widespread pain—that is, pain in all quadrants of the body (the right and left sides of the body, both above and below the waist) and axial skeletal pain (the cervical spine, anterior chest, thoracic spine, or low back)—that has persisted (or that persisted) for at least 3 months. The pain may fluctuate in intensity and may not always be present.
>
> 2. At least 11 positive tender points on physical examination (see diagram below). The positive tender points must be found bilaterally (on the left and right sides of the body) and both above and below the waist. . . .

---

[3] Social Security Rulings "are agency rulings 'published under the authority of the Commissioner of Social Security and are binding on all components of the Administration.'" *Miller v. Comm'r of Soc. Sec.*, 246 F. App'x 660, 662 (11th Cir. 2007) (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530 n.9 (1990)). While binding on the agency, these agency rulings, do not bind the Court. *Id.* (citation omitted).

3. Evidence that other disorders that could cause the symptoms or signs were excluded. Other physical and mental disorders may have symptoms or signs that are the same or similar to those resulting from FM. Therefore, it is common in cases involving FM to find evidence of examinations and testing that rule out other disorders that could account for the person's symptoms and signs. Laboratory testing may include imaging and other laboratory tests (for example, complete blood counts, erythrocyte sedimentation rate, anti-nuclear antibody, thyroid function, and rheumatoid factor).

B. The 2010 ACR Preliminary Diagnostic Criteria. Based on these criteria, we may find that a person has an MDI of FM if he or she has all three of the following criteria:

1. A history of widespread pain (see section II.A.1.);

2. Repeated manifestations of six or more FM symptoms, signs, or co-occurring conditions, especially manifestations of fatigue, cognitive or memory problems ("fibro fog"), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome; and

3. Evidence that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring conditions were excluded (see section II.A.3.).

SSR 12-2p, 2012 WL 3104869, at *2-3.

The ALJ found that Plaintiff's fibromyalgia "is not documented with the correct (11/18) number of tender points required by Social Security Ruling 12-2p and all of the impairments lack sufficient diagnostic testing and examination evidence to confirm the diagnoses represent medically determinable impairments." (Tr. at 16). Thus, the ALJ only considered SSR 12-2p, Section II.A. criteria and did not consider SSR 12-2p, Section II.B. criteria in determining that Plaintiff's fibromyalgia impairment was not a medically determinable impairment.

The Court begins its analysis with the 2010 ACR Preliminary Diagnostic Criteria of Section II.B. Plaintiff argues that the ALJ failed to consider whether Plaintiff's fibromyalgia satisfied Section II.B. of SSR 12-2p. (Doc. 19 at 10). Plaintiff claims that she meets the criteria of this section and, thus, the ALJ should have considered her fibromyalgia as a medically determinable impairment. (*Id.* at 11). Plaintiff states that the medical evidence demonstrates the

8

following: (1) a well-documented history of widespread pain; (2) repeated complaints of and treatment for fatigue, sleep problems, depression, anxiety, bowel problems, and "other hallmark symptoms of fibromyalgia;" and (3) testing showing that other causes of Plaintiff's symptoms were ruled out. (Doc. 19 at 10-11). The Commissioner does not dispute that the ALJ failed to evaluate Plaintiff under the Section II.B. criteria of SSR 12-2p, but argues that Plaintiff fails to meet the first element, namely a history of widespread pain. (Doc. 24 at 7-8). The Court examines the three criteria to determine if Plaintiff is able to satisfy SSR 12-2p, Section II.B.

### A History of Widespread Pain

To satisfy the first criteria under Section II.B., Plaintiff must demonstrate a history of widespread pain that must include pain in all quadrants of the body and axial skeletal pain that has persisted for at least 3 months, but the pain may fluctuate in intensity and may not always be present. SSR 12-2p, 2012 WL 3104869, at *2-3. Plaintiff asserts that Plaintiff has a "well-documented history of widespread pain complaints." (Doc. 19 at 10-11). The Commissioner responds that Plaintiff failed "to demonstrate either pain in all quadrants of the body and/or axial skeletal pain for a continuous three months." (Doc. 24 at 8). A brief summary of a sampling of the progress notes follows.

On May 20, 2013, Plaintiff went to Maria Espinoza, M.D. with complaints of low back pain. (Tr. at 441). As to the cervical spine, Dr. Espinoza found muscle spasms at the trigger point of the cervical muscles. (*Id.* at 443). Dr. Espinoza also found: "Trigger point was positive at the trapezius muscle. Trigger point was positive at the gluteal muscles. Trigger point was positive at the greater trochanter." (*Id.* (bullet points omitted)).

On July 1, 2013, Plaintiff returned to Dr. Espinoza, complaining that her symptoms were not controlled with medication. (Tr. at 434). Plaintiff complained of pain in arms, muscle spasm

9

in upper back, pain in thigh muscle, foot pain, soft tissue pain in toes, and intermittent pains. (*Id.*). Dr. Espinoza prescribed, *inter alia*, hydrocodone-acetaminophen for severe pain. (*Id.*). On a review of systems, Dr. Espinoza noted that Plaintiff was "feeling fine," but also noted a pain level of 6 with pain in Plaintiff's neck and back. (*Id.* at 435). As to Plaintiff's musculoskeletal system, Dr. Espinoza found "General/bilateral: Trigger point was positive at the occipital muscle. Trigger point was positive al the supraspinatus muscle. Trigger point was positive at the trapezius muscle. Trigger point was positive at the lateral epicondyle. Typical myofascial tender points." (*Id.* at 436 (bullet points omitted)). Dr. Espinoza assessed Plaintiff with, *inter alia*, "chronic pain vs. fibromyalgia component" and "myofascial pain syndrome" and her plan as to chronic pain was to prescribe medication. (*Id.*).

On March 26, 2014, Plaintiff returned to Dr. Espinoza with complaints of feeling tired and weak all of the time as well as complaints of soft tissue pain, leg pain, and myalgias in the neck and shoulder. (*Id.* at 401). According to Dr. Espinoza, one of Plaintiff's active problems is fibromyalgia. (*Id.*). Dr. Espinoza found Plaintiff systemically feeling fine and in no acute distress. (*Id.* at 402). Upon examination, Dr. Espinoza found the following: "General/bilateral: Trigger point was positive at the occipital muscle. Trigger point was positive at the trapezius muscle. Trigger point was positive at the greater trochanter. Trigger point was positive at the lateral epicondyle. Trigger point was positive at the medial knee." (*Id.* at 403(bullet points omitted)). Further, Dr. Espinoza noted that Plaintiff's mood was "[o]ne of pain." (*Id.*). Dr. Espinoza assessed Plaintiff with fibromyalgia and changed medication because her prior medication was not effective. (*Id.*). Dr. Espinoza recommended that Plaintiff increase her aerobic activity. (*Id.*).

On December 27, 2013, Plaintiff complained, *inter alia*, of muscle spasm in the right side of her mid-back. (*Id.* at 397). Dr. Espinoza noted one of Plaintiff's active problems was fibromyalgia. (*Id.*).

The Court finds that upon a review of just a few of the progress notes from Dr. Espinoza, Plaintiff shows a history of widespread pain in all quadrants of the body and axial skeletal pain that persisted for a period of at least three months. The Commissioner argues that no widespread pain was reported. (Doc. 24 at 8). This sampling of progress notes indicates that Plaintiff complained of widespread pain and, upon examination, was positive at many trigger points bilaterally. (*See* Tr. at 397, 401-403, 434-36, 441-43). Thus, the Court finds that Plaintiff's fibromyalgia medical records arguably satisfy the first criteria of SSR 12-2p, Section II.B.

### Repeated Manifestation of Six or More Fibromyalgia Symptoms

The second criteria under SSR 12-2p, Section II.B. requires repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions, such as fatigue, cognitive or memory problems, waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome. SSR 12-2p, 2012 WL 3104869, at *3. Plaintiff asserts that the medical records reflect that she complained of and was treated for fatigue, sleep problems, depression, anxiety, bowel problems, and other hallmark symptoms of fibromyalgia. (Doc. 19 at 11). The Commissioner did not respond to this argument.

The medical records include, *inter alia*, signs of depression (*see e.g.*, Tr. at 397, 399, 401, 405, 407, 409); fatigue (*see e.g.*, *id.* at 390, 422, 459); anxiety (*see e.g.*, *id.* at 350, 389, 391, 393); bowel issues (*see e.g.*, *id.* at 389, 397, 399); non-refreshing sleep and difficulty awakening (*see e.g.*, *id.* at 502-503); and memory problems and difficulty concentrating (*see e.g.*, *id.*) Thus, the Court finds that Plaintiff's fibromyalgia medical records arguably satisfy the second criteria.

### Evidence of Exclusions of Other Disorders

The third criteria under SSR 12-2p, Section II.B. requires that evidence of other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring conditions were excluded. SSR 12-2p, 2012 WL 3104869, at *3. Plaintiff claims that she has undergone testing to rule out her symptoms. (Doc. 19 at 11). The Commissioner did not respond on this point. The medical records include testing to rule out other medical problems. (*See* Tr. at 705, 773, 777, 788). Thus, the Court finds that Plaintiff's fibromyalgia medical records arguably satisfy the third criteria.

### Analysis

For the foregoing reasons, the Court finds that Plaintiff's fibromyalgia medical records arguably satisfy the three criteria of SSR 12-2p, Section II.B. Thus, without the ALJ evaluating Plaintiff's claim of fibromyalgia pursuant to SSR 12-2p, Section II.B., the Court is unable to determine "whether the ultimate decision on the merits of the claim by the ALJ is rational and supported by substantial evidence." *Morgan v. Comm'r of Soc. Sec.*, No. 8:14-CV-305-T-DNF, 2015 WL 1311062, at *7 (M.D. Fla. Mar. 24, 2015) (finding the ALJ's failure to evaluate the plaintiff's claim of fibromyalgia pursuant to the SSR 12-2p criteria warranted remand). Further, because the ALJ did not find Plaintiff's fibromyalgia to be a medically determinable impairment, the ALJ did not consider any of Plaintiff's symptoms arising from fibromyalgia (*e.g.*, pain, fatigue, difficulty concentrating) when determining Plaintiff's RFC. (*See* Doc. 19 at 9; Tr. at 17-21). Thus, the Court finds that the ALJ erred in failing to consider Plaintiff's fibromyalgia under Section II.B. of SSR 12-2p and, consequently, may have erred in failing to consider Plaintiff's symptoms that arise from her fibromyalgia in determining Plaintiff's RFC. The Court concludes that the ALJ's decision is not supported by substantial evidence.

### B. Plaintiff's Remaining Arguments

Plaintiff's remaining issues focus on the weight afforded Dr. Espinoza's opinion and the RFC assessment failing to consider all of Plaintiff's disorders and non-exertional limitations. (Doc. 19 at 2). Because the Court finds that on remand, the Commissioner must reevaluate Plaintiff's medical records relating to Plaintiff's fibromyalgia in light of all of the evidence of record, the disposition of these remaining issues would, at this time, be premature.

### III. Conclusion

Upon consideration of the submission of the parties and the administrative record, the Court finds that the decision of the Commissioner is not supported by substantial evidence.

**IT IS HEREBY ORDERED:**

(1) The decision of the Commissioner is **REVERSED and REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for the Commissioner to reconsider the medical evidence relating to Plaintiff's fibromyalgia, the weight afforded Dr. Espinoza's opinion, and Plaintiff's RFC in light of the medical evidence of record.

(2) If Plaintiff prevails in this case on remand, Plaintiff must comply with the Order (Doc. 1) entered on November 14, 2012, in Misc. Case No. 6:12-mc-124-Orl-22.

(3) The Clerk of Court is directed to enter judgment accordingly, terminate any pending motions and deadlines, and close the file.

**DONE AND ORDERED** in Fort Myers, Florida on March 13, 2018.

_____
MAC R. MCCOY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record
Unrepresented Parties